[Civ. No. 18785. Fourth Dist., Div. One. Aug. 1, 1980.]

MARY CHAPPLE, Plaintiff and Respondent, v.
BIG BEAR SUPER MARKET NO. 3 et al.,
Defendants and Appellants.

COUNSEL

Weissman, Johns & Gamer and Peter P. Gamer for Defendants and Appellants.

Joseph P. McDonough for Plaintiff and Respondent.

OPINION

**STANIFORTH, J.**—Mary Chapple's suit sought damages for breach of contract and negligence against Big Bear Super Market No. 3 (Big Bear) and Robert Petrich. Big Bear contracted to build a theatre for Chapple. Chapple charged Big Bear, without her consent, reduced the capacity of air conditioning equipment from the contract specified 20.43 tons to an inadequate 8-ton output. After a nonjury trial, the court awarded $11,180 damages plus attorney fees and costs against both defendants.

On appeal Big Bear and Petrich (1) attack the adequacy of the court's findings to support the judgment, (2) suggest they were charged with improper items of damage, (3) assert trial court failure to consider Chapple's duty to mitigate damages, and (4) contend Petrich was not a proper defendant.

## FACTS

Chapple owned unimproved property upon which Petrich, a real estate broker, suggested a movie theatre would provide a lucrative business venture. After several discussions, Petrich put Chapple in touch with Mr. Cooper and Mr. Bilton, two men experienced in theatre franchises, and introduced her to Dan Rodriques as a prospective long term tenant to rent and operate the movie house. Hal Wolfe, an architect recommended by Petrich, was retained by her and drafted plans for the theatre. A 15-year lease was negotiated and entered into with Rodriques.

Wolfe's prepared plans and specifications for construction of the theatre were put out to bid and Big Bear was low bidder at $105,705. Chapple told Petrich the bid was too high and requested he negotiate with Big Bear to reconsider a price between $90,000 and $95,000. Mr. Zanderson of Big Bear prepared a list of possible modifications to reduce costs to $95,000. This list was reviewed at a meeting between Petrich, Zanderson, Cooper, Bilton, Wolfe and Rodriques. Chapple was not present at this meeting nor was she informed of its substance. The contract was later signed by Chapple without any modification of the specification for air conditioning. Later, the tenant to be, Rodriques, was requested as a "formality" to sign—and did sign—an addendum authorizing the reduction to an eight-ton capacity unit.

Big Bear in place of a 20-ton capacity air conditioning unit as called for in the theatre specifications installed an 8-ton capacity unit. The evidence is in sharp dispute whether Chapple or her agent agreed to the reduction in cooling capacity. The reduction was discussed at the meeting attended by both Rodriques and Wolfe. Petrich testified he went to Chapple's home and informed her of all the agreed modifications, including the decreased air conditioning. According to Petrich, Chapple said she would be agreeable to whatever Rodriques, the long term occupant, accepted as it was "his building." Chapple denied this statement, denied ever being informed of the disputed modifications.

The installed air conditioning unit was inadequate, resulted in uncomfortably warm temperatures in the theatre. Chapple requested defendants to remedy the defect, to make the units conform to original specifications. Big Bear's attempts at repair were unsuccessful and ultimately Chapple contracted independently to modify the existing system.

She spent a total of $11,180 in increasing cooling capacity up to original specifications. Defendants assert the supplemental facilities exceeded the original requirement. Nevertheless, the court awarded Chapple the entire $11,180.

The court stated: "...I suspect that all of the things that were eventually done by way of reductions were mentioned in some form or another to Mrs. Chapple, but I'm also convinced, and particularly in view of Mr. Petrich's testimony, that she was never given an intelligent choice as to the reduction of the capacity of the air conditioning, and I'm satisfied that she never designated Rodriques as her agent for that purpose, because she was financially responsible for the construction of a building that was going to be hers, and not his, notwithstanding the fact that he was to be a tenant prospectively for 15 years. But, of course, realistically, that's not the way it turned out.

"I can't conclude that she gave Rodriques a carte blanche to design her building or consent to any and everything, and, as a matter of fact, as I interpret Rodriques' testimony, he was wondering, 'Why in the world are you asking me? It's not my building.' It sounds a little bit like an end result, although that's not my conclusion.

"But I'm at a loss to know why it is that Mrs. Chapple was not asked to sign the changes on the plans. She's the one who is going to pay the bill. She's the one that's going to own the building. She's the one who has made it be known that she can't afford a building that would cost more than $95,000 by the time she got down to that figure, and is it even realistic to speculate as to what she might have done had she had that information?

"I don't conclude that the architect was authorized to bind Mrs. Chapple to anything by virtue of anything she told the defendant, or any of them here. I don't conclude that Cooper or Bilton could bind her, and neither she, nor Rodriques, agrees that he was authorized to represent her. So I find liability here."

Defendant requested findings of fact and conclusions of law pursuant to rule 232(b) of the California Rules of Court. Objections to proposed findings were then filed and submitted without oral argument. The findings adopted by the court concluded in part: "7. The defendant...failed, neglected and refused to build the same in accor-

dance with the plans and specifications relative to the air conditioning. Without the knowledge or consent of the plaintiff, defendants ROBERT PETRICH and BIG BEAR SUPER MARKET NO. 3, and each of them, reduced the air conditioning capacity in such building from the 20.43 ton capacity provided in the plans and specifications to only an 8 ton capacity.

"8. The said defendants, and each of them, knew, or should have known, that the 8 ton capacity air conditioning was inadequate for said building but withheld said information from plaintiff."

Also noteworthy is an addendum filed with the above written finding to the effect "The Court determines that the requested special findings are either irrelevant or misstate the Court's findings as stated in open court on January 10, 1979, which statements are hereby adopted and reaffirmed to express the findings and conclusions hereinabove set forth."

Premised upon these findings, the court entered judgment for Chapple.

## DISCUSSION

■ Big Bear and Petrich contend the written findings inadequately address the issue of authority, express or apparent, of the tenant Rodriques and the architect Wolfe to bind plaintiff to the disputed reduction. Once a request is made pursuant to Code of Civil Procedure section 632[1] and California Rules of Court rule 232, "(c)...the court *shall*... prepare...proposed findings...(e)...[which] shall fairly disclose the court's determination of all issues of fact material to the judgment in the case...." (Rule 232; italics added.) ■ When a requested finding is not made on an issue, the appellate court is prohibited from inferring the trial court resolved this issue in favor of the prevailing par-

---

[1]Code of Civil Procedure section 632 in pertinent part provides: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required, except as herein provided. [¶] In superior courts, upon such trial, the court shall announce its intended decision. Within the time after such announcement permitted by rules of the Judicial Council, any party appearing at the trial may request findings. Unless findings are requested, the court shall not be required to make written findings and conclusions."

ty. (*McAdams* v. *McElroy* (1976) 62 Cal.App.3d 985, 995 [133 Cal. Rptr. 637].) If the issue is material to the pleadings, a judgment rendered in its absence must be reversed. (*Matanky* v. *Board of Medical Examiners* (1978) 79 Cal.App.3d 293, 301 [144 Cal.Rptr. 826].)

 Here authority to consent to modification of the terms of the theatre contract by virtue of agency was a material defense to Chapple's claim of damage. The adequacy of the court finding on the issue of agency therefore becomes critical. The court did find the defendants acted "without the knowledge or consent of plaintiff." This finding, albeit general, adequately disposes of the issue tendered. It is an elemental rule of agency law that knowledge of an agent is imputed to his principal. Similarly, consent exercised in the scope of agency would bind the principal. (See generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 139, pp. 743-744.) Thus, if either Rodriques or Wolfe were found to be Chapple's agents authorized to consent to a modification of the plans and specifications, then knowledge and consent would have been imputed to her. Logically, it follows from the finding of fact that *defendant* acted without the knowledge or consent of plaintiff, that as a matter of substantive law the court found no agency.

 Furthermore, a memorandum opinion or other antecedent expression of the trial court may be used to explain and interpret the formal written findings. (See e.g., *Kuffel* v. *Seaside Oil Co.* (1977) 69 Cal.App.3d 555, 567-568 [138 Cal.Rptr. 575]; *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 995-996 [133 Cal.Rptr. 166]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App. 2d 349 [28 Cal.Rptr. 357]; cf., *Taormino* v. *Denny* (1970) 1 Cal.3d 679, 684 [83 Cal.Rptr. 359].) After trial the court, consistent with its written finding of "no knowledge or consent," stated "she never designated Rodriques as her agent" nor did he act apparently as such. Rodriques expressed to defendants, "Why in the world are you asking me? It's not my building." Paralleling this, the court refused to conclude "the architect was authorized to bind Mrs. Chapple...." Appellants permitted this now-claimed inadequacy in proposed finding to go unchallenged. They failed to appear, to argue at the hearing on the proposed finding.

Appellant's argument takes on even less substance considering the trial judge's written addendum dated February 7, 1979. This supple-

mented the January 7, 1979, findings with the judge's oral statements rejecting the purported agency of Rodriques and Wolfe.

■ Defendants pose this alternative argument: The written addendum purporting to elevate and incorporate the judge's oral conclusions into written findings creates an irreconcilable inconsistency mandating reversal.

■ As a general rule, a court's inconsistent pronouncements in either an oral or a memorandum opinion are irrelevant for the purpose of impeaching the findings (*Taormino* v. *Denny, supra,* 1 Cal.3d 679, 684.) However, if the inconsistency is present in the findings themselves *and* "one part of the contradictory findings would support the judgment, and another part would *necessarily* upset it, then the judgment must be reversed." (*Learned* v. *Castle* (1889) 78 Cal. 454, 460 [7 P. 34]; *Carlton* v. *Castranova* (1961) 189 Cal.App.2d 409, 412-413 [11 Cal.Rptr. 258]; cf., *Sierra Screw Products* v. *Azusa Greens, Inc.* (1979) 88 Cal. App.3d 358, 371 [151 Cal.Rptr. 799].)

■ The trial judge found Chapple both knew and did not have knowledge of the reduction in air conditioning capacity. In this context, the critical inquiry is whether this apparent inconsistency is material to the conclusions of law reached in this case. Essential to the judgment that defendants breached their respective duties was a finding neither Chapple nor an authorized agent agreed to the challenged modification. The trial court consistently found on the one hand lack of "intelligent choice" on the part of Chapple, and on the other hand no "consent" by her. These findings both support the judgment. If it be assumed Chapple had some knowledge, it would not "necessarily upset" the conclusion of law the construction contract was unmodified for Chapple's *consent was needed.* Moreover, knowledge, if not adequate to enable Chapple to exercise an "intelligent choice" would negate consent and support a conclusion Petrich's fiduciary duty was breached.[2] Therefore, this incorporation of inconsistent language requires only analysis, not reversal.

---

[2]Big Bear-Petrich's proposed finding number 12 makes this concession: "ROBERT PETRICH did not tell the plaintiff that the change in the air conditioning capacity created a marginal system because he reasonably believed that the cost of upgrading of the air conditioning system would be borne by Daniel Rodriques and because he believed the plaintiff had delegated decision-making on the subject to Daniel Rodriques."

■ Additionally, defendants urge the judgment of damages was assessed them for items not necessary to meet the original contract specifications. Specifically, Big Bear objects to the inclusion of the cost represented by the "power saver" equipment, replacement cost of existing duct system, fire dampers and repair cost for existing units. Defendant sought in proposed special findings to have the court acknowledge the impropriety of awarding damages based upon these purported extras. In response, the court concluded "the requested special findings are either irrelevant or misstate the Court's findings...."

The appropriate measure of damages for breach of contract "to construct improvements on real property...is the reasonable cost to the plaintiff to finish the work in accordance with the contract." (*Walker* v. *Signal Companies, Inc.*, 84 Cal.App.3d 982, 993.) Credible testimony of the only refrigeration expert called to testify found all the improvements necessary to conform the air conditioning to original specifications. The court findings and award of $11,180 damages is supported by substantial evidence.

Nor did defendants carry their burden of proof to establish Chapple failed to mitigate damages. Defendants claim Chapple refused a bid of $3,200 to repair the system. The court was free to disbelieve testimony of Petrich that he informed Chapple of this bid. This court cannot reweigh the evidence.

■ Finally, Petrich asserts he was improperly joined as a defendant since he was not a party to the construction contract itself. This argument misconceives the legal basis of Petrich's liability. As the court stated, a fiduciary relationship existed between Petrich and Chapple. A breach of this relationship resulted from Petrich's failure to fully disclose facts necessary for Chapple to intelligently enter the construction contract. Such factual base supports liability dehors the construction contract. (See generally 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, §§ 84-86, pp. 704-706.) The court's written findings of Petrich's liability are consistent with the incorporated oral findings.

■ Since the right of recovery against Petrich arose from breach of his agency, duties independent of the construction contract, an award of attorney fees based upon the construction contract was improper.

This matter therefore is remanded with directions to the trial court to strike the award of attorney fees against Petrich and to assess attorney fees against Big Bear in a sum the trial court determines to be the reasonable apportioned share for prosecuting this action including appeal against Big Bear only. (Cf., *Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 36-37 [161 Cal.Rptr. 516].)

In all other respects, the judgment is affirmed. Chapple is awarded costs on appeal.

Brown (Gerald), P. J., and Wiener, J., concurred.

A petition for a rehearing was denied August 18, 1980.