[No. B004809. Second Dist., Div. Three. Feb. 6, 1985.]

POLSTER, INC., Plaintiff and Respondent, v.
CAROL SWING et al., Defendants and Appellants.

**COUNSEL**

Nathan Goller for Defendants and Appellants.

Raiskin & Revitz and Steven J. Revitz for Plaintiff and Respondent.

**OPINION**

**DANIELSON, J.**—Defendants, Carol and Ronald Swing and Carol's Interiors, Inc. (Carol's Interiors or lessee), interior designers, appeal from a judgment in favor of plaintiff, Polster, Inc. (Polster or lessor) for damages and an award of prejudgment interest, for defendants' failure to return

leased property to plaintiff in the same condition as received. We affirm the judgment in part and reverse it in part.

FACTS

On February 5, 1974, Polster and Carol's Interiors entered into a written lease of a store located in Sherman Oaks, California for the term of five years. Carol's Interiors was to conduct a retail furniture store and interior decorating business on the premises. The lease provided that the lessee must surrender the premises at the expiration of the term of the lease in the same condition as when received, reasonable use and wear thereof excepted. Upon taking possession, Carol's Interiors remodeled the interior of the premises over a period of six to eight months for use as an interior design studio and to display furnishings. During some of that time they were open for business.

Before the term expired, the lessees informed Polster that they did not wish to renew the lease and it was agreed that Carol's Interiors would continue to occupy the premises until March 11, 1979, paying prorata rental from the date of lease expiration until that date. After Carol's Interiors surrendered the premises, Polster discovered that portions of the interior, including the ceiling, light fixtures, interior walls and front door were in a state of disrepair in violation of the lease agreement and so informed Carol's Interiors.

From November 1978 through the summer of 1979, Polster listed the premises for lease with real estate brokers. The brokers had difficulty in finding a new tenant due to the bad condition of the premises and recommended to Polster that he grant a repair allowance, rent concessions or a period of free rent to a prospective tenant in order to obtain a new lessee. A new tenant was finally located and a new lease was executed, dated September 4, 1979, providing for free rent until December 1, 1979, or until the tenant first opened for business to the public, whichever occurred first. The new tenant took possession of the property in the same condition it was in when Carol's Interiors vacated it in March, and then extensively remodeled the premises to suit its own business needs.

On April 30, 1979 Polster filed a complaint against Carol's Interiors and Carol and Ronald Swing for breach of contract and conversion, praying for damages of $55,000 and interest thereon, punitive damages of $100,000, and reasonable attorneys' fees.

Trial began on June 30, 1983. On November 1, 1983, the court issued its statement of decision. On November 7, 1983, judgment was entered for

plaintiff, and on November 22, 1983, defendants filed their notice of appeal from that judgment.

## CONTENTIONS

Defendants contend:

1. They did not violate paragraph 5 of the lease which provided that defendants had to leave the premises in as good a condition as when leased.

2. The court did not apply the proper measure of damages.

3. There was no evidence of diminished market value caused by the condition of the premises.

4. Plaintiff failed to mitigate damages.

5. Plaintiff should not have been allowed to recover prejudgment interest, because its claim was not liquidated, as found by the court.

6. The award of attorneys' fees was excessive.

## DISCUSSION

### *The Damage to the Property Exceeded Normal Wear and Tear*

Defendant's first contention is without merit. The trial court found that the property had been left in a state of "gross disrepair and disorder" and the record amply supports this finding. The record on appeal contains substantial evidence of damage to the drop ceiling, ceiling tiles, lighting fixtures, ceiling support bars, the interior walls and the front door sill and jamb. While the tenant is not obligated to renovate the premises at the expiration of his lease, or restore the premises to his landlord in a better condition than they were at the outset of his lease (*Kanner* v. *Globe Bottling Co.* (1969) 273 Cal.App.2d 559, 565-566 [78 Cal.Rptr. 25]), the covenant to return the premises in as good a condition as when leased, excepting normal wear and tear, was clearly breached by the state in which these premises were returned to the lessor.

### *The Court Applied the Correct Measure of Damages*

Defendant contends that plaintiff may not recover the reasonable cost of making repairs to the premises without actually making the repairs and incurring the attendant expense. Defendant is mistaken. In *Iverson* v. *Spang*

*Industries, Inc.* (1975) 45 Cal.App.3d 303, 308 [119 Cal.Rptr. 399], the court described the measure of damages for breach of covenant to restore thusly: "The relief to be awarded a prevailing lessor for breach of a covenant to restore the premises may be based upon one of three possible measures: The cost of restoring the premises, the diminution in the market value of the premises, or specific performance of the covenant. [Citation.] ■ In the majority of jurisdictions, including California, the restoration principle is employed; i.e., where an action is brought after expiration of a term for breach of a lessee's covenant to keep the premises in repair or to surrender them in good repair or in a specified condition, the measure of damages is the reasonable cost of putting the demised premises into the required state of repair or the condition contemplated by the covenant. [Citations.] An allowance may also be made for the loss of rental during the reasonable time required to make such repairs or restoration. [Citations.]"

In its statement of decision, the trial court found that under *Iverson* v. *Spang Industries, Inc., supra,* 45 Cal.App.3d 303, a proper measure of damages is the diminution in the market value of the premises due to the damage caused by the defendants. The trial court also implicitly found that where the lessor did not actually expend money to effect the necessary repairs but the same were effected by the lessor's agreement with his incoming tenant, evidence of the estimated reasonable cost of such repairs is a proper measure of the diminution in the market value of the premises. The court also allowed for loss of rental for three weeks, finding that to be time which reasonably would be required to effect the necessary repairs.

Civil Code section 3300, pertaining to the measure of damages for breach of contract states, in pertinent part: "For the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." ■ "The measure of damages for a breach of lease is that established by Civil Code section 3300 in breach of contract cases—an amount which will compensate the aggrieved party for all the detriment caused by the breach of which in the ordinary course would be a likely result." (*Guntert* v. *City of Stockton* (1976) 55 Cal.App.3d 131, 142 [126 Cal.Rptr. 690, 127 Cal.Rptr. 602].)

The *Iverson* case, quoted above, listed three possible measures of damages for breach of the covenant to restore, noting that in California, the cost of restoring the premises is employed. (*Iverson* v. *Spang Industries, Inc., supra,* 45 Cal.App.3d at p. 308.) While noting diminution of value as one of the acceptable measures of damages in the case at bench, the court

actually employed the estimated cost of restoring the premises as the measure of damages.

██ The issue then becomes whether the estimated cost of repair can be used as the measure of the damages which the lessor has sustained because of the lessee's breach of the covenant to restore where, as here, the lessor has not expended money to effect the necessary repairs but has caused the same to be effected by the lessor's agreement with his incoming lessee.

While we have found no California decision directly in point, it has been held in other jurisdictions that the liability of a tenant to pay for the cost of repairs where he has breached a covenant to repair, is not affected by the act of a subsequent tenant who actually makes the repairs, and that: "[T]he view has been taken that the fact that the landlord has, by an agreement with an incoming tenant or buyer, relieved himself from expending his own money upon repairs, does not mitigate the lessee's obligation to pay damages for breaching his covenant." (Annot. (1961) 80 A.L.R.2d 983, 1028, § 18 and cases cited; citing *Appleton* v. *Marx* (1908) 191 N.Y. 81 [83 N.E. 563]; *In re Jewell* (D.C.N.Y. 1879) 13 Fed. Cas. 579 (No. 7,302).)

As we have stated above, it is beyond doubt that plaintiff actually suffered detriment to his property, as reflected by the condition of disrepair in which defendants left it.

Accordingly, we find that the trial court properly utilized the estimated cost of repairs as the measure of damage resulting from the defendants' breach of the covenant to restore and that the evidence supports its findings.

*Plaintiff Properly Mitigated Its Damages in Leasing the Premises at a Reduced Rate*

██ It is settled that a lessor, injured by breach of a contract must mitigate his damages. (*Rubel* v. *Peckham* (1949) 94 Cal.App.2d 834, 837 [211 P.2d 883].) ██ However, the burden is on the lessee to prove that the lessor failed to mitigate. (*Chapple* v. *Big Bear Super Market No. 3.* (1980) 108 Cal.App.3d 867, 876 [167 Cal.Rptr. 103]; 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 521, p. 2197.)

In the case at bench, plaintiff rented the premises to a successor tenant at reduced rent. That act may be construed as an attempt to mitigate damages. (See *Iverson* v. *Spang Industries, Inc., supra,* 45 Cal.App.3d at p. 308.) Referring to Civil Code section 1951.2, applicable where the tenant abandons the property before the end of term, Witkin quotes the Law Revision Commission in its comment to that section as follows: "The duty to mitigate

the damages will often require that the property be relet at a rent that is more or less than the rent provided in the original lease. The test in each case is whether the lessor acted reasonably and in good faith in reletting the property. [Citations.]" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 521, p. 2197.)

We find the same general test of reasonableness to be applicable in this case. Plaintiff produced evidence showing it realized it had either to make repairs or make rent concessions in a successor lease, and that, under his financial circumstances then prevailing, it would be better for him to make such concessions.

Defendant has failed to meet its burden of proving that plaintiff failed to mitigate.

*Plaintiff Was Not Entitled to Recover Interest From March 10, 1979, Based on a Liquidated Claim*

The trial court found that plaintiff's damages were based upon a liquidated claim because plaintiff's damages were certain, or capable of being made certain by calculation immediately after defendants vacated the premises, and therefore plaintiff was entitled to interest at the legal rate from the date defendants vacated on March 10, 1979.

■■■ Civil Code section 3287, subdivision (a) provides, in relevant part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. . . ."

This section does not authorize prejudgment interest as a matter of law where the amount of damages depends upon a judicial determination based upon conflicting evidence. (*Marine Terminals Corp.* v. *Paceco, Inc.* (1983) 145 Cal.App.3d 991, 995 [193 Cal.Rptr. 687]; *Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20 Cal.App.3d 1054, 1062 [98 Cal.Rptr. 153].)

■■■ Prejudgment interest runs from the date when damages are certain or are capable of being calculated to a certainty. (*Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 798 [142 Cal.Rptr. 1].)

■■■ "[T]he certainty requirement of section 3287, subdivision (a) has been reduced to two tests: (1) whether the debtor knows the amount owed

or (2) whether the debtor would be able to compute the damages." (*Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc.* (1983) 149 Cal.App.3d 901, 911 [197 Cal.Rptr. 348].)

If the defendant does not know or cannot readily compute the damages, the plaintiff must supply him with a statement and supporting data so that defendant can ascertain the damages. (*Levy-Zentner Co.* v. *Southern Pac. Transportation Co., supra,* 74 Cal.App.3d at 798.) "[W]here a defendant does not know what amount he owes and cannot ascertain it except by accord or judicial process, he cannot be in default for not paying it." (*Id.,* at p. 799.)

The *Levy-Zentner Co.* case involved damage to real property by fire. The court found that in order to apply the statutory requirement of certainty to the loss of market value of real property the estimates of expert appraisers were required to render the damages certain. (*Id.,* at p. 800.) It allowed interest from the date on which plaintiff supplied defendants with these estimates. (*Id.,* at p. 801.)

In the *Iverson* case, *supra,* (45 Cal.App.3d at p. 311), the court found the amount expended to repair damage caused by a lessee was not an amount capable of being made certain within the meaning of Civil Code section 3287, subdivision (a) because, prior to the entry of judgment, the defendant could not have known what it owed plaintiff. It was impossible to tell what portion of costs consisted of damage by prior lessees, what portion constituted reasonable wear and tear, and what portion was caused by defendant.

In this case, there is no evidence that Polster supplied Carol's Interiors with accurate repair estimates within a reasonable time after the loss. On March 5, 1979, Polster sent Carol's Interiors a letter reminding it of the terms of the lease and describing the current unsatisfactory condition of the property, followed by a letter which described the damage to the property in more detail on March 16, 1979. On May 10, 1979, Carol's Interiors responded with their own description of the damages and an offer of settlement. It appears from the record that expert estimates of the damages were not prepared until two and one-half years later, in November of 1981, and it is not clear when they were received by Carol's Interiors.

Further, the cases indicate that where there is a large discrepancy between the amount of damages demanded in the complaint and the size of the eventual award, that fact militates against a finding of the certainty mandated by Civil Code section 3287, subdivision (a). (See *Chesapeake Industries, Inc.* v. *Togova Enterprises, Inc., supra,* 149 Cal.App.3d at p. 910; *Marine Ter-*

*minals Corp.* v. *Paceco, Inc., supra,* 145 Cal.App.3d at p. 997, where a small discrepancy was deemed unimportant.)

In the case at bench, the amount of the original demand was $55,000. The amount eventually found due after the receipt of all evidence was $7,836. This large discrepancy is inconsistent with a sum certain or capable of being made certain at the time of the breach which was the basis of this civil action.

Accordingly, we find that the amount due Polster was not a sum certain within the meaning of Civil Code section 3287, subdivision (a).

*The Subject of Attorneys' Fees Is Not Before This Court*

Carol's Interiors, appellants in this proceeding, have urged in their brief that the amount of attorneys' fees awarded by the trial court is excessive. The question of attorneys' fees is not before us in this appeal.

The appeal was noticed to be from ". . . the judgment entered . . . on November 7, 1983." That judgment makes no mention of attorneys' fees. Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from. Accordingly, we do not reach the subject of court-awarded attorneys' fees in this decision.

DECISION

The judgment as to damages and costs of suit is affirmed.

That portion of the judgment awarding interest on damages from March 10, 1979, to the date of entry of judgment is stricken.

Each party is to bear its own costs on appeal.

Lui, Acting P. J., and Arabian, J., concurred.

A petition for a rehearing was denied February 20, 1985.