Filed 3/12/24  Marriage of L.R. and K.A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of L.R. and K.A. | |
| L.R., | D081463 |
| Appellant, | |
| v. | (Super. Ct. No. D557861) |
| K.A., | |
| Respondent; | |
| Colleen Warren, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Victor N. Pippins, Judge.  Motion to dismiss denied; order affirmed.

L.R., in pro. per., for Appellant.

No appearance for Respondent K.A.

Colleen Warren, in pro. per., for Respondent.

Appellant L.R., a self-represented litigant, appeals a family court order that she pay $17,521 in attorney fees and a $10,000 deposit for trial fees to respondent Colleen Warren, the court-appointed counsel for L.R.'s and K.A.'s minor daughter.  L.R.'s arguments are difficult to glean from her briefing,

which fails to comply with California Rules of Court format and other requirements. She challenges the order for various reasons, including that the court did not follow California Rules of Court, rule 5.241, it assertedly made false statements as to whether Warren's billed fees were within the scope of her appointment, the court did not address certain arguments L.R. made as to Warren's hourly rate or her work on a different case, and the court ignored evidence in her income and expense declarations. Warren has moved to dismiss the appeal under the disentitlement doctrine, claiming L.R. has willfully refused to comply with the underlying order that L.R. pay her fees. We decline to dismiss the appeal, but affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND[1]

L.R. and K.A. are the parents of A.A., a minor, and since at least 2020 have been involved in various family court proceedings relating to A.A.'s custody and other matters. L.R. was represented by counsel through much of these proceedings. The court appointed Warren as counsel for A.A. in June 2020 under Family Code[2] section 3150, subdivision (a), finding it in A.A.'s best interests to appoint counsel to represent her. Several days later, Warren filed a Judicial Council form declaration regarding her qualifications. The court initially specified that Warren would be paid at the superior court $60 rate for "up to 20 hours" and ordered the parties to pay her costs equally. In August 2020, it set Warren's compensation at her regular $350 hourly rate.

---

[1]     We take much of the background from the clerk's transcript, as L.R.'s briefing lacks pagination or clarity as well as record citations for many of its propositions. We granted the parties' requests to augment the record with certain documents and deemed them a part of the record on appeal.

[2]     Undesignated statutory references are to the Family Code. Rule references are to the California Rules of Court.

In January 2022, the court held a hearing in part to discuss issues with Warren's fees, on L.R.'s request to "correct" Warren's payment. L.R.'s counsel argued that the family court had not determined the parties' financial abilities to pay before appointing Warren, and did not have the parties' current income and expense declarations, which was contrary to rule 5.421. L.R.'s counsel pointed out there was a later August 2020 hearing, but argued "there was never a specific order made by the court based on the income and expense declarations on August 7th, stating that . . . minor's counsel should be paid at $350 [per hour]" and asked that the order "be corrected today." K.A.'s counsel argued L.R.'s counsel had agreed to the August 2020 order, and K.A. had agreed to pay the amount. He characterized L.R.'s request as an attempt to get Warren off the case. K.A.'s counsel pointed out L.R. had the ability to pay all of her attorneys and keep the excessive litigation going. Warren also stated that both counsel had agreed to the draft order, the court had found the parties had the ability to pay, and it had allocated the payments. She maintained that any noncompliance with rules should have been dealt with when the orders were made. She addressed L.R.'s ability to pay, pointing to L.R.'s cash flow from May to September 2021.

The court tentatively denied L.R.'s request, pointing out the applicable rule did not have definite language saying when the ability-to-pay determination had to be made, and counsel could argue the reasonableness of Warren's fees and the allocation later. It took the matters under submission and eventually denied without prejudice the request to modify or invalidate the order regarding Warren's appointment or payment.

In March 2022, the court ordered A.A. to primarily reside with K.A. after finding it was not in A.A.'s best interest for her parents to share legal

3

custody, as there was "an extreme level of discord between the parties" and K.A. had proven he could responsibly exercise sole legal custody.

In June 2022, Warren filed a request that L.R. pay her $17,521, which was one-half the outstanding balance of her attorney fees billed at $350 an hour. She also requested the court order the parties to pay her a retainer for the upcoming 11-day trial, which at the time was set for November 8, 2022, and involved "complex child custody issues includ[ing] allegations of alienation, child abuse, abduction" and a psychologist's child custody evaluation. Warren characterized the matter as "extremely litigious" with L.R. submitting an extensive witness list and having a history of submitting multiple, duplicate exhibits. K.A. submitted his own declaration on Warren's request, asking the court to excuse Warren from attending all of the trial days, stating that L.R. had over-litigated the case for six years and violated court orders.

In response, L.R. submitted a declaration challenging the reasonableness of Warren's hourly rate. She stated Warren's rate should have been $60 for a particular time period, and that Warren began billing too early, had time entries for matters in which she was not appointed, and failed to timely file or serve a legally required minor's counsel declaration. L.R. asked the family court to declare that Warren operated under a conflict of interest as Warren offered evidence to the district attorney's office in a criminal matter against her. L.R. purported to set out the court's January 2022 ruling on the matter and maintained her net disposable income was not enough to allow her to contribute to Warren's costs. L.R. submitted a current income and expense declaration. It represented that from 2019 to the present (August 2022) she had paid her attorneys $692,763.03 out of "[l]oans from family and friend" and did not currently owe her attorney any money.

4

In September 2022, the family court heard argument and took the matter under submission. In November 2022, it ordered L.R. to pay $17,531 to Warren by December 1, 2022, finding Warren's fees reasonable and within the scope of her employment. It rejected L.R.'s argument about Warren's conflict, pointing out Warren was appointed to represent A.A., and that conversations between Warren and detectives investigating allegations of criminal acts by L.R. that affected A.A. were "squarely within the scope of the appointment." With respect to L.R.'s ability to pay, the court observed that she had not countered K.A.'s estimates that she had paid over $600,000 to her own counsel, and found it "clear that [L.R.] has the financial ability to fuel a tremendous amount of litigation." It found L.R.'s own litigation history showed she had the ability to pay her share of the fees. The court further ordered L.R. and K.A. to deposit $10,000 each with Warren for anticipated trial fees. It reserved the question of any reallocation of Warren's fees.

In January 2023, L.R. filed this appeal from the court's November 2022 order.

## DISCUSSION

### I. *Motion to Dismiss*

Asserting L.R. has refused to pay her fees since she sent her first invoice in August 2020 and that L.R. is willfully violating the appealed-from order, Warren asks us to dismiss this appeal under the disentitlement doctrine. "Under the disentitlement doctrine, a reviewing court has inherent power to dismiss an appeal when the appealing party has refused to comply with the orders of the trial court." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265.) It is not punishment for contemptuous acts, but is an equitable tool that allows a reviewing court to induce compliance with a presumptively valid order. (*In re Marriage of*

5

*Hearn* (2023) 94 Cal.App.5th 380, 388-389; see also *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459 [doctrine " 'prevents a party from seeking assistance from the court while that party is in "an attitude of contempt to legal orders and processes of the courts of this state" ' "]; *In re E.M.* (2012) 204 Cal.App.4th 467, 474.) The doctrine is applied in the civil context "when a party's violation of a court order frustrates the other party's ability to protect their legal rights." (*In re E.E.* (2020) 49 Cal.App.5th 195, 206-207.)

"Courts do not lightly apply the disentitlement doctrine," and its application is discretionary. (*Findleton v. Coyote Valley Band of Pomo Indians* (2021) 69 Cal.App.5th 736, 756-757; *In re Marriage of Hearn, supra,* 94 Cal.App.5th at p. 389.) It applies only when the balance of the equitable concerns make it a proper remedy. (*In re Marriage of Hofer*, *supra*, 208 Cal.App.4th at p. 459.) In *Marriage of Hofer,* for example, a husband "chose not to disclose evidence of his financial circumstances despite three separate discovery orders and sanctions" and under those circumstances was held disentitled to appeal from the attorney fee award. (*Id.* at p. 456.) The husband's refusal to comply with the court's discovery orders "precluded [it] from considering the very evidence [husband] claims is necessary to support the attorney fee award." (*Id.* at p. 458.) Other cases present egregious circumstances. (*In re Kamelia S.* (2000) 82 Cal.App.4th 1224, 1229 [" 'The case for application of the doctrine is most evident where . . . the party is a fugitive who refuses to comply with court orders or make an appearance despite being given notice and an opportunity to appear and be heard' "].)

While we do not take lightly L.R.'s failure to pay minor's counsel's fees under the appealed-from order, the circumstances are not so egregious as the cases where the doctrine is generally applied. Here, in challenging the order's validity, L.R. presented income and expense declarations and

contended she is unable to pay minor's counsel's fees.  While the merits of those contentions are at issue, her conduct does not rise to the level where we believe dismissal is appropriate.  We exercise our discretion to consider her appeal and deny the motion to dismiss.

## II.  *Governing Appellate Principles*

It "is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)  The appellant must "affirmatively" show error; " '[t]his is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  In particular, " '[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment,' " rather the appellant has a duty " 'to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal. [Citation.]  If no citation 'is furnished on a particular point, the court may treat it as waived.' " (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

Further, an appellant must "support claims of error with meaningful argument and citation to authority"; "[w]e are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; see also *Menges v. Department of Transportation* (2020) 59 Cal.App.5th 13, 27 [" ' "Mere suggestions of error without supporting argument or authority other than general abstract

7

principles do not properly present grounds for appellate review." [Citation.] "Hence, conclusory claims of error will fail" ' "], quoting *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457; see also *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520; *County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 945 [the appellant " 'bears the duty of spelling out in [her] brief exactly how the error caused a miscarriage of justice' "].) It is not our role to construct theories or arguments for the appellant to undermine the judgment and defeat the presumption of correctness. (*Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800, 823, fn. 10; *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799.)

Self-represented litigants are held to these standards. (*Tanguilig v. Valdez, supra*, 36 Cal.App.5th at p. 520; *Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

III. *Legal Principles and Standard of Review*

Section 3150 authorizes the trial court to appoint private counsel to represent the interests of a minor child in a custody or visitation proceeding if the court determines that such an appointment would be in the child's best interest, "provided that the court and counsel comply with the requirements set forth in Rules 5.240, 5.241, and 5.242 . . . ." (§ 3150, subd. (a).) Appointed counsel must "continue to represent that child unless relieved by the court upon the substitution of other counsel by the court or for cause." (§ 3150, subd. (b).)

Section 3153 and rule 5.241 govern compensation of minor's counsel. He or she is entitled to "a reasonable sum for compensation and expenses, the amount of which shall be determined by the court." (§ 3153, subd. (a); *In re Marriage of Lisi* (1995) 39 Cal.App.4th 1573, 1576.) Except where the court

8

determines the parties are unable to financially pay (§ 3153, subd. (b)), that sum must "be paid by the parties in the proportions the court deems just." (§ 3153, subd. (a).) "Th[e] clear legislative directive that counsel's fees are to be paid, either by the parties or by the county, imposes a mandatory duty upon the court to award attorney fees to such counsel and vests in the attorney the right to receive a 'reasonable sum for compensation and expenses' at the time the order is made." (*Lisi*, at p. 1576.)

Rule 5.241 states that the court "must determine the respective financial ability of the parties to pay all or a portion of counsel's compensation" and before making the ability-to-pay determination "should consider factors such as the parties' income and assets reasonably available at the time of the determination . . . ." (Rule 5.241(b)(1)(A).) The parties "must have on file a current income and expense declaration . . . or financial statement . . . ." (Rule 5.241(b)(1)(B), italics omitted.) The rule provides that "[t]he court should determine the parties' ability to pay: [¶] (A) At the time counsel is appointed; [¶] (B) Within 30 days after appointment; or [¶] (C) At the next subsequent hearing." (Rule 5.241(b)(2).)

In general, "[w]e apply an abuse of discretion standard when reviewing a trial court order awarding attorney fees. [Citation.] ' "Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts." ' [Citation.] Hence, the fee award ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' [Citation.] Indulging all inferences in favor of the trial court's order, as we are required to do, we presume the trial court's attorney fees award is correct . . . ." (*McKenzie v. Ford Motor Co.*(2015) 238 Cal.App.4th 695, 703-704; see also *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th

9

426, 433.) A family court order awarding fees " 'will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.' " (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532 [award of attorney fees in child custody and support proceeding]; see generally *Land Partners, LLC v. County of Orange* (2018) 19 Cal.App.5th 741, 745 [attorney fee award " 'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence' "].) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

We review de novo whether the trial court had the authority to make a fee award. (See *George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 138.) But " '[d]e novo review does not obligate [the appellate court] to cull the record for the benefit of the appellant . . . . As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error . . . .' " (*Nealy v. City of Santa Monica* (2015) 234 Cal.App.4th 359, 372.) The appellant bears this burden on appeal, even if she did not bear the burden of proof in the trial court proceedings. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230.)

IV. *Analysis*

L.R.'s arguments are difficult to follow. As stated, her opening brief is not paginated and her somewhat rambling points are not set out with clear, coherent headings with cogent or meaningful legal analysis. Many of her contentions are bare assertions without record citation or legal authority. While her opening brief contains a table of authorities, there are no page

references in the table and the listed cases are not found elsewhere in the brief. She intersperses clipped snippets from the record below. Her arguments and assertions at times refer to the applicable standard of review but do not meaningfully apply it, and they do not attempt to demonstrate prejudice. These deficiencies entitle us to disregard her claims of error. (*Menges v. Department of Transportation*, *supra*, 59 Cal.App.5th at p. 27; *County of Los Angeles v. Nobel Ins. Co.*, *supra*, 84 Cal.App.4th at p. 945.) We have no duty to guess or speculate how L.R.'s assignments of error are prejudicial. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

We have nevertheless attempted to glean and address her arguments for reversal with the foregoing appellate review and legal standards in mind. Doing so compels us to reject her claims.

A. *Delay of Trial Argument*

At various points in her brief, L.R. argues the child custody trial was delayed to about a year later, and so Warren's request for payment and her trial retainer "should have been delayed over a year out as well." L.R. asserts she did not receive confirmation this had occurred, which is the reason for her appeal.

The point, which is unsupported by any record citations, raises matters occurring after L.R. filed her notice of appeal. We disregard her assertions for the absence of record citations (*Tanguilig v. Valdez*, *supra*, 36 Cal.App.5th at p. 520; *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267) and also because reviewing courts usually disregard matters occurring after rendition of an appealed judgment. (*Truong v. Nguyen* (2007) 156 Cal.App.4th 865, 882.) That the court continued the trial date does not impact its ruling that L.R. become current on Warren's fees, which had already been incurred before the September 2022 hearing.

11

B. *Court's Asserted Violation of Rule 5.241*

L.R. contends the court violated rule 5.241 by making its ruling without the parties' current income and expense declarations on file, as well as by failing to determine the parties' ability to pay every 90 days. She maintains the court "abused its discretion by misrepresenting my ability to pay [Warren], based on the fact I already spent hundreds of thousands on attorney fees." She argues the court "ignore[d] the evidence" in them, and dismissed evidence that she is "broke and hundreds of thousands of dollars in debt . . . ." She asks "for a re-evaluation of [her income and expense declarations]," claiming she has no money to pay Warren.

Rather than address how the court's ruling was erroneous under the applicable review standard, L.R.'s arguments reassert the points her counsel made during the hearing on Warren's request for order, including that the court did not have before it a current income and expense declaration from K.A.. She does not explain how, even assuming the court erred by issuing its ruling in the absence of a current income and expense declaration for K.A., its ruling prejudiced her. There is no dispute K.A. had by then paid his share of Warren's fees. L.R.'s counsel referred the court to exhibits she had submitted on K.A.'s income: a "Schedule of Assets and Debts" as well as a request for production of documents, to argue he had a greater ability to pay Warren.

L.R. has not demonstrated an abuse of discretion or that the court's ruling must be reversed due to any violation of rule 5.241. The rule requires a current income or expense declaration *or financial statement*. (Cal. Rules of Court, rule 5.241(b)(1)(B).) The family court had before it K.A.'s schedule of assets and debts submitted by L.R., as well as L.R.'s current income and expense declaration, which the court stated it considered. L.R.'s counsel made her arguments that K.A. was better positioned to pay Warren, and that

12

L.R. could not afford Warren's fees. Warren urged the court to reaffirm its order that L.R. pay her 50 percent share of Warren's fees, pointing to L.R.'s ability to pay large sums to her own counsel.

Ultimately, we view the matter as one of credibility. Despite L.R.'s characterization of her expenses and financial status, the court plainly believed Warren's representation that the documentation showed L.R. had paid her lawyers $692,763.03 from May 2019 to August 2021, averaging over $24,000 per month in attorney fees to fund what K.A.'s counsel stated was "all this litigation that's being conjured up by [L.R.] . . . ." Having credited Warren's testimony and evidence, the court determined L.R. had the ability to pay her share of Warren's bills, which totaled just over $17,000. In essence, L.R. asks us to reweigh the evidence and make a different credibility finding, which we cannot do. " 'The trial court sits as trier of fact and it is called upon to determine that a witness is to be believed or not believed. This is the nature of fact finding. "The trier of fact is the sole judge of the credibility and weight of the evidence . . . ." [Citation.]' [Citation.] 'In that role, the judge may reject any evidence as unworthy of credence, even uncontradicted testimony. [Citation.]' [Citation.] 'We do not judge credibility on appeal. An adverse factual finding is a poor platform upon which to predicate reversible error.' " (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 319.) We do not replace the family court's exercise of discretion with our own by accepting evidence the family court rejected. (*Ibid.*)

C. *Validity of Order Appointing Warren*

L.R. argues that in ordering Warren's appointment as minor's counsel in June 2022, the court did not check the parties' finances, an omission that violated both rule 5.421 and section 3150. L.R. could have, but did not appeal from the June 2020 order. (See, e.g., *In re Marriage of Metzger* (2014) 224 Cal.App.4th 1441, 1444.) We are limited to considering the family court's November 2022 order. "Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." (*Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 436; see also *Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 45-47 [rule of liberal construction of notice of appeal does not permit court to address issues pertaining to order or judgment not specified in the notice of appeal].)

D. *Warren's Assertedly "False" Testimony and Compliance with Family Court Rules, Hourly Rate, and Scope of Appointment*

Pointing to portions of her declaration filed in advance of the September 2022 hearing, L.R. contends Warren gave "false testimony to justify her need to be on the case," Warren never complied with a California Rule of Court requiring her to justify her need every 90 days, the scope of Warren's appointment was solely "to investigate the petitioner's allegations of abuse by third parties presented at [June 22, 2020][*sic*]," and Warren impermissibly began charging $350 an hour, violating the order that she bill at $60 per hour. L.R. says the court deferred the $60 versus $350 rate as a "trial issue . . . ." L.R. also maintains Warren's invoice contains charges for a completely different case, but she references only her counsel's argument on that point at the September 2022 hearing. She repeats her unsuccessful argument below that Warren might "possibly [have] a conflict of interest if [Warren] is called as a witness in a criminal trial against [her]."

14

As Warren points out, it is in fact San Diego County Superior Court rule 5.13.1 to which L.R. refers. That rule provides in part that "failure by minor's counsel to timely file the required *Declaration of Counsel for a Child Regarding Qualifications* (JC Form FL-322) *may* result in a forfeiture of fees and costs incurred prior to the filing date." (San Diego County Superior Court Rules, rule 5.13.1(A), italics added.) Even assuming L.R.'s claim that Warren violated that rule were correct, such a violation does not mandate she forfeit her fees. L.R.'s argument does not warrant reversal of the court's order that L.R. pay Warren's fees.[3]

With regard to Warren's increased billing rate, L.R. maintains the family court failed to address the "discrepancy." But the August 2020 order in the record reflects that the court ordered Warren's hourly billing rate set at $350, changing it from $60 per hour, which had been set for a limited time. Again, L.R. could have but did not appeal from that order, and we are

---

[3]     Elsewhere, the local rule provides: "Minor's counsel must submit a declaration and order for payment of fees on the *Declaration and Order for Payment of Attorney Fees and Costs of Minor's Counsel,* (SDSC Form #D-137) at every 'ability to pay' and/or 'review' hearing or no less than every 90 days if there is no pending review hearing. Failure to timely submit the fee declaration *may* result in the forfeiture of all billings older than 180 days." (San Diego County Superior Court Rules, rule 5.13.1(B)(2), some italics added.) The local rule also provides for a complaint procedure for "alleged inadequacies or behaviors" giving rise to the complaint. (San Diego County Superior Court Rules, rule 5.13.1(C)(1)(d).) While L.R. on appeal asserts Warren was "protecting [K.A.] at my expense," "gave false testimony to justify her need to be on the case," and "falsely accus[ed L.R.] of violating a made-up virtual conjoint therapy [order]," she does not show she made such a complaint under its provisions.

15

without jurisdiction to consider the claim here. Her characterization of the matter as a "trial issue" misconstrues the court's remarks at the hearing.[4]

We reject L.R.'s argument that the sole reason for Warren's appointment was related to L.R.'s complaints concerning a custody monitor and the location where monitoring would take place, and that when the monitor was removed from the case in August 2022, Warren's appointment was "no longer an issue." In August 2020, the family court extended Warren's appointment and the record shows this matter was highly contentious and heavily litigated. Warren asserts L.R. absconded with A.A. at one point for 70 days. The register of actions spans over 70 pages. The family court expressly ruled that Warren's fees were within the scope of her appointment, and L.R. does not explain in any meaningful way how its ruling was beyond the bounds of reason or why it was so unreasonable that no court would order it.

Finally, L.R.'s assertion about Warren's billing on a completely different case is unsupported by the record, and does not defeat the presumption of correctness of the court's ruling that Warren's fees were within the scope of her appointment. With respect to a purported conflict of

---

4      At the point L.R. cites, the family court was responding to L.R.'s counsel, telling her that it was not taking comments for the record any longer from either party. The court stated that the California Rules of Court were not clear as to when the court had to make an ability to pay determination, and it did not agree it was at the point of appointment. The court continued: "I anticipate given the financial issues in this case it's probably going to end up being a trial issue, because I don't think it's going to be resolved to minor's counsel's satisfaction prior to that. But I don't find that the [order appointing Warren] is invalid and it's not an issue. I am going to deny it without prejudice in the sense that I don't want to cut off your ability at a later point to argue that it should be apportioned in a different way, because the court is going to have to look at that." The court's remarks about financial issues being potentially open for trial were not part of its order.

interest, L.R. does not address the family court's ruling and reasoning rejecting the argument, and as a result does not establish an abuse of discretion.  It is not enough to simply reargue the point made below.  On our review, we are not to decide the controversies anew, but only determine whether there was no reasonable basis for the court's decision.

## DISPOSITION

The order is affirmed.


                                                    O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


CASTILLO, J.