Filed 3/3/14  K Trans, Inc. v. KL Fenix Corp. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| K TRANS, INC., <br><br>     Plaintiff, Cross-defendant and Appellant, <br><br> v. <br><br> KL FENIX CORPORATION, <br><br>     Defendant, Cross-complainant and Respondent. | B242647, B245388 <br><br> (Los Angeles County <br> Super. Ct. No. TC024347) |

APPEALS from a judgment and postjudgment order of the Superior Court of Los Angeles County, William Barry, Judge.  Affirmed.

Steven C. Kim & Associates and Steven C. Kim for Plaintiff, Cross-defendant and Appellant.

Park & Lim, S. Young Lim and Jessie Y. Kim for Defendant, Cross-complainant and Respondent.

_____

K Trans, Inc., a trucking company, appeals from the judgment entered in favor of its landlord, KL Fenix Corporation, after the trial court awarded damages of $113,691.40 for unpaid rent, late payment fees and the cost to repair and replace pavement on portions of the common area and leased premises used by K Trans to park its trucks. K Trans contends KL Fenix failed to provide proper notice of default and an opportunity to cure, the parties had orally agreed to a rent reduction, and the repaving cost exceeded what was properly attributable to K Trans's misuse of the common area and damage to the leased premises in excess of normal wear and tear. K Trans also appeals from the order of attorney fees in favor of KL Fenix. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Lease and Written Amendments*

K Trans leased 1,600 square feet of office space and 70,000 square feet of pavement, specifically designed to bear the weight of freight container storage, from KL Fenix for three years commencing May 1, 2007. The rent, payable on the first day of the month, was $12,000, subject to increase at the 13th and 25th months; K Trans's share of common area operating expenses was fixed at $500 per month. The lease provided K Trans would pay a late charge equal to 10 percent of the overdue amount, "without any requirement for notice," if rent was not received by KL Fenix within five days after it was due. K Trans paid a $25,000 security deposit at lease execution. The lease included an option to renew for a three-year term "[p]rovided that lessee has not been in default of the lease agreement terms and/or conditions . . . ."

The permitted use for the premises was trucking, storage and office administration. The lease also allowed K Trans to use the common areas, including parking and loading areas, walkways and driveways, but expressly excluded "the right to store any property, temporarily or permanently, in the Common Areas" unless the landlord's written consent had been obtained.[1] KL Fenix was obligated to maintain the

---

[1] The lease also prohibited using more parking spaces than provided in paragraph 1.2(b) and limited use of those spaces to vehicles no larger than full-size passenger automobiles or pick-up trucks without prior written permission of the landlord.

2

common areas, subject to reimbursement pursuant to section 4.2 of the lease. Paragraph 4.2(e) provided, subject to an exclusion not applicable here, "Common Area Operating Expenses shall not include the cost of . . . Common Area capital improvements, such as the parking lot paving, elevators, fences that have a useful life for accounting purposes of 5 years or more." K Trans was obligated to maintain the leased premises "in good order, condition and repair." If K Trans failed to do so, KL Fenix was permitted to "enter upon the Premises after 10 days' prior written notice to Lessee . . . perform such obligations on Lessee's behalf, and put the Premises in good order, condition and repair, and Lessee shall promptly pay to Lessor a sum equal to 115% of the cost thereof."[2]

The lease included a standard default and breach provision (paragraph 13). "Default" was "defined as a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease." "Breach" was defined as the occurrence of one of several listed "Defaults, and the failure of Lessee to cure such Default within any applicable grace period." Enumerated defaults included the failure to pay "Rent . . . when due . . ." or the "commission of waste" when "such failure[s] continue[] for a period of 3 business days following written notice to Lessee."

In accordance with the provision requiring lease modifications to be in writing, on April 1, 2008 the parties executed a written amendment providing that monthly rent from that date through September 30, 2008 would be paid by K Trans in the amount of $10,000 and KL Fenix would deduct the $2,000 shortfall from K Trans's security deposit, reducing it to $13,000 by September 30, 2008. On November 6, 2008 the parties executed a second written amendment providing $8,000 of the rent due for October 2008 through January 2009 would be deducted from the security deposit, reducing it to $5,000.

Paragraph 1.2(b), however, did not specify any parking spaces for K Trans's use (the provision was left blank).

[2]  Paragraph 7.4(c) provided, "Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, and in good operating order, condition and state of repair, ordinary wear and tear excepted. 'Ordinary wear and tear' shall not include any damage or deterioration that would have been prevented by good maintenance practices."

3

The amendment stated, "Starting February 1st, 2009 rent due will resume in accordance to the original lease agreement."  Nevertheless, K Trans continued paying $2,000 less than required by the terms of the lease through October 2009.  Paragraph 4.3 of the lease provided, "Acceptance of a payment which is less than the amount then due shall not be a waiver of Lessor's rights to the balance of such Rent, regardless of Lessor's endorsement of any check so stating."

  2. *K Trans's Storage of Containers in the Common Area; Damage to the Pavement; Notice the Lease Would Not Be Renewed and of the Cost to Repair*

In mid-2009 K Trans began storing shipping containers on the common area pavement, which was not reinforced to bear the weight of the containers.  Steve Chang, the property manager for KL Fenix, and Frank Lu, an employee of another tenant, testified they began noticing damage to the pavement, which had been completely resurfaced about a month before K Trans had moved in, after K Trans started storing the containers there.  They also testified K Trans further damaged the pavement by moving the containers with the landing gears down.[3]

In a January 7, 2010 letter KL Fenix informed K Trans that its option to renew was "void since you have been in default of the lease agreement terms and/or conditions."  In a letter dated March 1, 2010 KL Fenix informed K Trans it had obtained an estimate of $71,700 to repair "pavement for the entrance and parking areas for the Premises" that had been severely damaged "due to the heavy commercial traffic related to your business entering and exiting the Premises. . . .  Additionally, even though [KL Fenix] has informed you on several occasions that the pavement for the entrance and parking area was in disrepair, you have failed to take the appropriate measures to correct the Lease violation."  KL Fenix  said it would seek 115 percent of the repair cost pursuant to paragraph 7(c) if payment was not received.  The letter also stated, "[Y]ou have been tardy in tendering your rent every month for the past three years.  Additionally, you have not tendered full rent payments for the past nine months.  Therefore, you are in default of

_____

3      Landing gears are the vertical bars used to elevate the back end of a freight container when it is parked.

4

the Lease, and your option to renew the Lease is void. [¶] In accordance with our remedies under the Lease for default, you are hereby notified that you must remove yourself from the Premises on April 30, 2010."

In a March 16, 2010 letter K Trans stated it intended to repair the alleged damage to the pavement although it did "not agree that it failed to maintain the pavement. So long as K Trans starts to repair within 30 days from your demand, K Trans will not be in breach. [¶] Further, your client appears to seek a windfall. The alleged repair cost of $71,700 is just ridiculously and exorbitantly high and has no reasonable basis."

3. *The Complaint, Cross-Complaint, Unlawful Detainer Action, Default Judgment and Trial*

On May 3, 2010 KL Fenix served K Trans with a 30-day notice of lease termination, advising it to vacate the premises by June 3, 2010. On May 27, 2010 K Trans filed a complaint for declaratory and injunctive relief, alleging it had not breached the lease and had properly exercised its option to renew. KL Fenix filed an unlawful detainer action on June 3, 2010 seeking possession of the premises and statutory damages up to $600 per day; it did not specify that any delinquent rent was due.

On June 28, 2010 KL Fenix filed a cross-complaint in the declaratory relief action for breach of contract, waste and trespass. The cross-complaint sought damages in the amount of $18,000 for deficient rent payments ($2,000 per month for February 1, 2009 through October 1, 2009); $10,800 in late payment charges; and $109,800 to repair damage to the parking lot portion of the premises and the common area driveway (KL Fenix alleged it had obtained a second estimate after noticing new damage subsequent to the March 2010 estimate).[4] K Trans vacated the premises around August 1, 2010.

---

[4]     The cross-complaint also sought $31,200 for trespass from April 2009 through June 2010 during which time K Trans's storage of containers in the common area impeded the use of the common area by other tenants. The causes of action for waste and trespass were dismissed at the beginning of trial.

K Trans's attorney at the time the complaint and cross-complaint were filed failed to answer the cross-complaint, and default was entered on October 8, 2010. A default judgment in favor of KL Fenix was entered on December 30, 2010, and KL Fenix began enforcement proceedings. On May 13, 2011 the court granted K Trans's motion to set aside the default and default judgment under Code of Civil Procedure section 473, subdivision (b).

Trial on the cross-complaint commenced on March 5, 2012.[5] With respect to the deficient rent payments, Ji Kum Lim, president of K Trans, testified he and Young Kim, president of KL Fenix and a certified public accountant, had agreed K Trans's rent would be reduced by $2,000 commencing February 2009, not merely deducted from whatever remained of the security deposit as had been provided in the two lease amendments. Ji Kum Lim stated, "The market continued to be slow, and the business was also slow. So I asked that I be allowed to deduct $2,000 for while, and I said that I would raise it back up upon Mr. Kim's request." According to Ji Kum Lim, Young Kim agreed and did not ask full rent to be reinstated until the end of October 2009, after which K Trans resumed paying full rent. During direct examination by K Trans, Young Kim testified that he and Ji Kum Lim had discussed the possibility of reducing K Trans's rent and that K Trans began paying $2,000 less per month following that conversation. Young Kim admitted KL Fenix did not send any demand letters for the monthly $2,000 shortfall.

Regarding the late payment charges, evidence established rent for July 2008 through January 2010 was received more than five days after the first of the month. Gina Kang, KL Fenix's controller, explained K Trans occasionally delivered a check within the five day period, but would ask her to hold it for several days because "there was not enough money to pay the rent." The 10 percent late payment charges totaled more than $18,000.

---

5     K Trans's complaint was dismissed on February 28, 2011 for failure to appear at trial.

With respect to the damaged pavement, Ji Kum Lim admitted K Trans had parked its containers on the common area pavement and received complaints about it. He further testified K Trans had an oral agreement with a contractor to repair the damage in April or May of 2010, but was prevented from commencing repair by KL Fenix.

Steve Chang testified he obtained several new bids after informing K Trans in March 2010 the cost to repair would be $71,700 because of additional damage due to the storage of an increasing number of containers through the time K Trans finally vacated the premises. K Trans also obtained a bid for the repair work. Chan Woo Nam, the owner of AR Construction Company, testified he submitted a bid for $19,400 in response to K Trans's request for a proposal: $9,500 for repairs to the common area plus $9,700 for repairs to the leased premises with a total of 571 square feet of pavement to be repaired. Chan Woo Nam submitted a second bid for $76,825 in response to Chang's request for a proposal to repave (that is, remove and replace) approximately 27,000 square feet with a combination of asphalt and concrete. Nam testified it was his recommendation, not K Trans's, to patch the 571 square feet.

Gina Kang testified she obtained three bids and chose Commercial Paving & Coating because it was the least expensive of the three bids she had directly obtained (three bids obtained by Steve Chang were less expensive than Commercial Paving's bid). Commercial Paving's bid of $120,000 was based on replacing the existing asphalt in the common area with concrete pursuant to Kang's instructions.

In February 2011 KL Fenix paid Commercial Paving & Coating $146,145: $130,000 to remove and replace the common area pavement with concrete (the original $120,000 bid plus $10,000 for a change order to include an additional area) plus $16,145 to patch and repair damage to the 70,000 square foot paved portion of the leasehold premises. Charles Saletta of Commercial Paving testified it was his recommendation the common area pavement be removed and replaced because of its "poor" condition. In his view it probably would have been "throwing your money away" to patch the common area as they did the leasehold premises pavement because it "wouldn't last." He further

7

testified the damage to the common area pavement was "definitely not normal wear and tear" from trucks driving over it.

4. *The Statement of Decision*

On March 23, 2012 the trial court found in favor of KL Fenix, awarding it $18,000 for unpaid rent, $20,466.40 in late payment charges and $76,825 for repair work to the common area and leasehold paved areas. The court rejected K Trans's argument the parties had orally modified the lease, finding, "Each of the prior agreements had been reduced to writing, with a fixed expiration date, and with a funding mechanism for the shortfall, i.e. the security deposit, which would have been exhausted in only 2 ½ months if there had been a further extension as defendant claims. It would be inconsistent with the past conduct of the parties, and commercially unreasonable to expect that [KL Fenix] would have agreed orally to a reduction in the rent for an unlimited time." In awarding $76,825 for paving repairs instead of the $146,145 KL Fenix had paid to Commercial Paving, the court explained, "The estimate prepared by [AR Construction Co.] most accurately reflects the damage that both sides contemporaneously believed to be related to defendant's use of the leasehold and unauthorized use of the common areas. . . . [KL Fenix] asked for more, but the court was troubled by how Commercial Paving and Coating was selected over other companies. In addition, [KL Fenix] failed to prove that the work it commissioned was all reasonably necessary as a result of defendant's operations."

K Trans requested a statement of decision on several controverted issues including whether (1) the storage of the containers on the common area pavement and the failure to pay rent constituted breaches "where it was undisputed that there was no written notice in compliance with" paragraph 13 of the lease; (2) the $76,825 constituted a capital improvement; (3) K Trans, "in absence of expert testimony, should be held responsible for the entire estimate of $76,825.00 without any deduction or credit for any damages to the common areas caused by the other tenants . . . and to K Trans'[s] leased area caused by ordinary wear and tear"; and (4) the late payment fee was warranted for those months

8

in which K Trans had timely delivered the rent, but KL Fenix had delayed deposit at K Trans's request.

After considering K Trans's objections to KL Fenix's proposed statement of decision, the court issued a statement of decision reiterating its initial ruling and dismissing as "not persuasive" K Trans's "challenges based upon its reading of the lease. . . .  The court was more influenced by the contemporaneous actions of the parties." The court also found KL Fenix's March 10, 2010 letter provided K Trans with notice of its failure to pay full rent or make timely payment, breaches K Trans had failed to cure. With respect to the damage to the common area pavement, the court found Steve Chang's and Frank Lu's testimony about the damage caused by K Trans's trucks "was persuasive. . . .  The court rejects [Ji Kum Lim's] belief that the damage was caused by other tenants.  Based on the more persuasive evidence, the court finds that K Trans was the party responsible for the unauthorized and excessive damage to the pavement in the common area, and finds that the pavement damage in K Trans'[s] leased premises was not normal wear and tear."

Judgment was entered on May 22, 2012 in the amount of $108,691.40, reflecting a $5,000 credit for K Trans's security deposit that had not been returned.

5. *The Award of Attorney Fees*

On June 13, 2012 KL Fenix moved for $81,906 in attorney fees pursuant to paragraph 31 of the lease, which provided, "If any Party . . . brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. . . . The term '**Prevailing Party**' shall include, without limitation, a Party . . . who substantially obtains or defeats the relief sought, as the case may be . . . ."  In support of its motion Young Kim submitted a declaration stating he was not only the president of KL Fenix, but also the custodian of records for the company.  Attached to his declaration were "true and correct" copies of bills from KL Fenix's law firm, Park & Lim, in connection with the K Trans litigation.  Lead counsel on the matter, S. Young Lim, also

9

submitted a declaration stating KL Fenix had incurred fees and costs of $81,906 over the course of the matter and generally describing the work performed and specifying the hourly rates for himself, associates and law clerks who had worked on the case.

K Trans opposed the motion on grounds including KL Fenix did not substantially obtain the relief it sought (that is, it was awarded only 39 percent of the relief it had sought in its cross-complaint—$108,691.40 of $279,600),[6] the billing statements were inadmissible because the declarations offered in support of them lacked sufficient foundation and $38,000 of the fees incurred was unnecessary, excessive and unreasonable.[7]

At the July 31, 2012 hearing on the motion, the court stated its preliminary view that KL Fenix was the prevailing party because it had "received a substantial part of what it sought," including dismissal of K Trans's complaint by the court, but that some of the costs were duplicative. After extensive argument, including an offer of proof from S. Young Lim that the billing statements were prepared in the ordinary course of business and he had reviewed them, the court overruled K Trans's foundational objections to the admissibility of the billings statements, but agreed to accept additional briefing on the reasonableness of the fees in light of K Trans's counsel's contention he did not review every billing entry carefully because he had not believed there was a sufficient foundation laid for the statements in the first instance. On November 2, 2012 the court awarded KL Fenix $76,000 in attorney fees, which the court found was "a reasonable sum under the circumstances."

---

[6]    K Trans's argument erroneously deducts the $5,000 security deposit credit from the damages award.

[7]    For example, K Trans argued the fees associated with obtaining and enforcing the default judgment could have been avoided if counsel for KL Fenix had simply made a telephone call to K Trans's former counsel.

10

## DISCUSSION

### 1. *Standard of Review*

"The trial court's judgment and statement of decision in this case contain both findings of fact and conclusions of law. 'We review the trial court's findings of fact to determine whether they are supported by substantial evidence.[8] [Citation.] To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo.'" (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

We also generally review the trial court's interpretation of the lease de novo. (*ASP Properties Group, L.P. v. Fard, Inc.*, *supra*, 133 Cal.App.4th at pp. 1266-1267 [when no conflicting extrinsic evidence offered to interpret lease, we review the trial court's construction de novo]; accord, *California National Bank v. Woodbridge Plaza LLC* (2008) 164 Cal.App.4th 137, 142.) "A lease agreement is subject to the general rules governing the interpretation of contracts. [Citation.] 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' [Citation.] When possible, the parties' mutual intention is to be determined solely from the language of the lease. 'The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," . . . controls judicial interpretation.' [Citation.] 'Interpretation of a contract "must be fair and reasonable, not leading to absurd conclusions."'" (*Bill Signs Trucking, LLC v. Signs Family Limited Partnership* (2007) 157 Cal.App.4th 1515, 1521.)

---

8    Under the substantial evidence standard of review, we view the record in the light most favorable to the prevailing party and resolve all conflicts and give the benefit of all reasonable inferences in support of the judgment. (See *Axis Surplus Ins. Co. v. Reinoso* (2012) 208 Cal.App.4th 181, 189.) We do not evaluate the credibility of the witnesses or otherwise reweigh the evidence. (See *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498, 514-515.)

11

2. *The Trial Court Properly Found in Favor of KL Fenix*

    a. *Delinquent rent*

        i. *Substantial evidence supports the trial court's findings the lease was not orally modified and KL Fenix did not waive its right to receive full rent*

A written contract that expressly precludes oral modification, as in the instant case, may nonetheless "be modified by an oral agreement to the extent that the oral agreement is executed by the parties." (Civ. Code, § 1698, subd. (b);[9] Cal. Law Revision Com. com., 9 West's Ann. Civ. Code (2011) foll. § 1698, p. 458 ["The introductory clause of subdivision (c) recognizes that the parties may prevent enforcement of executory oral modifications by providing in the written contract that it may only be modified in writing. . . . Such provision would not apply to an oral modification valid under subdivision (b)."].) Even if not modified by an executed oral agreement, the parties may, by their words or conduct, waive contractual rights. (See *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1339 ["[l]ike any other contractual terms, timeliness provisions are subject to waiver by the party for whose benefit they are made"]; *Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 141 ["'the parties may, by their conduct, waive [a no oral modification] provision' where evidence shows that was their intent"].) "'[T]he pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right.'" (*Old Republic Ins. Co. v. FSR Brokerage, Inc.* (2000) 80 Cal.App.4th 666, 678.) "'The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]' [Citation.] Thus, '"California courts will find waiver when a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."'" (*Ibid.*)

---

9    Civil Code section 1698 provides, "(a) A contract in writing may be modified by a contract in writing. [¶] (b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [¶] (c) Unless the

12

K Trans contends there was substantial evidence the parties orally agreed to reduce its rent by $2,000 for the nine months from February to October 2009: Ji Kum Lim's testimony that Young Kim agreed to reduce K Trans's rent by $2,000 for an indefinite period of time while business was poor; Young Kim's acknowledgement the two had discussed reducing the rent and K Tran's payment of rent was $2,000 less than due after that conversation; and the fact KL Fenix did not seek past-due rent in the unlawful detainer action.[10] The question, however, is not whether there is substantial evidence to support K Trans's claim, but whether there is substantial evidence to support the trial court's finding the parties did not orally agree to modify the agreement. The trial court implicitly found not credible Ji Kum Lim's testimony the parties had agreed to a temporary rent reduction and found Young Kim's oblique testimony they had discussed a rent reduction, followed by K Trans's subsequent payment of less than full rent, insufficient to support an inference of an oral modification in light of the two written lease amendments that had allowed K Trans to make up the rental short fall by deductions from its security deposit. These determinations were within the exclusive purview of the trial court, and it was "'entitled to accept or reject all or any part of the testimony of any witness.'" (*Kelly–Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397, 409; see *People v. Elliott* (2012) 53 Cal.4th 535, 585 ["'it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends'"]; *Linear Technology Corp. v. Tokyo Electron*

---

contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration . . . . [¶] (d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts."

10      Paragraph 17 of the Judicial Council unlawful detainer form complaint permits the plaintiff to specify whether it is seeking "past-due rent." KL Fenix checked the box indicating it was seeking statutory damages up to $600 for K Trans's continued possession of the premises after expiration of the lease term, but did not check the box for past-due rent.

13

*Ltd.* (2011) 200 Cal.App.4th 1527, 1534 ["we may not reweigh the evidence or judge the credibility of witnesses unless their testimony is 'inherently improbable or clearly false'"].)

Relying on *Cirimele v. Shinazy* (1954) 124 Cal.App.2d 46 (*Cirimele*), K Trans argues KL Fenix's acceptance of the reduced rent without protest was an executed oral modification of the lease. However, in *Cirimele* there was no dispute whether the lessor had orally agreed to reduce the rent. Rather, the question was only whether that reduction, agreed to by both parties, was contingent upon the lessee remaining in possession and paying rent for the full lease term, which he failed to do. In determining the amount of rent due, the court held, "Except as to the first eight months of 1950, these facts do not support a finding that the rate specified in the lease was reduced to $325 by an executed oral agreement. In respect to those eight months the oral agreement was executed by the payments made. [Citation.] It remained unexecuted as to the remaining months of the period in question." (*Id.* at p. 49; see *Julian v. Gold* (1931) 214 Cal. 74, 78 ["so far as executed, the oral agreement reducing the rent is binding upon the lessor"].) Phrased slightly differently, acceptance of a reduced rent without protest would permit enforcement of an oral modification of the lease; it does not prove the claimed oral modification was agreed to by KL Fenix. The court's finding no such oral agreement was made is fully supported by the record.

Finally, K Trans contends KL Fenix waived its right to receive (or should be estopped from receiving) full rent by accepting the reduced rent without protest notwithstanding paragraph 4.3 providing that acceptance of a payment less than the amount due "shall not be a waiver of Lessor's right to the balance of such Rent." (See *Bettelheim v. Hagstrom Food Stores, Inc.* (*Bettelheim*) (1952) 113 Cal.App.2d 873, 878 ["[e]ven a waiver clause may be waived by conduct"].) The trial court's rejection of this argument is binding on this court because, although the underlying facts may be undisputed, more than one reasonable inference may be drawn from them. (See *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319; cf. *Bettleheim*, at p. 878 [appellate court "bound by the conclusion drawn by the trial court" that plaintiff had waived right

14

to receive higher rental rate; "[w]hile a contrary conclusion might have been drawn, such a conclusion is not inevitable or the only reasonable one"].) In light of the prior two written amendments authorizing KL Fenix to deduct the $2,000 shortfall from the security deposit, it is a reasonable inference KL Fenix only intended to help K Trans while it was experiencing financial difficulties without agreeing to a true rent reduction.

*Julian v. Gold*, *supra*, 214 Cal. 74, relied upon by K Trans, does not compel a different conclusion. In that case it was undisputed the parties had orally agreed to a rent reduction. The Court held the lessor was not permitted to recover the full amount of rent due under the terms of the original lease several years later when the lessee was unable to pay the reduced rent because the oral agreement had been executed. Waiver under Code of Civil Procedure section 2036 was simply an alternate basis to reach the same conclusion. (*Julian*, at p. 79.)[11] As discussed, in the instant case the pivotal issue was whether the parties had orally agreed to reduce the rent. The trial court reasonably concluded they did not.

### ii. *Sufficiency of notice*

K Trans contends KL Fenix failed to provide proper notice of default and an opportunity to cure as required by paragraph 13 of the lease. K Trans asserts the March 1, 2010 letter from KL Fenix was insufficient because it only referred to delinquent rent as the ground for declaring the option to renew void; it did not specify the amount of delinquent rent and did not request K Trans to cure the default.

If this were an unlawful detainer action, K Trans's argument would have merit: A three-day notice to pay or quit must specify the amount of delinquent rent due. (Code Civ. Proc., § 1161, subd. 2; see *Valov v. Tank* (1985) 168 Cal.App.3d 867, 871-872; see generally 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 724,

---

[11] Code of Civil Procedure section 2036 provides (as it did in 1931), "'The person to whom a tender is made must, at the time, specify any objection he may have to the money, instrument, or property, or he must be deemed to have waived it; and if the objection be to the amount of money, the terms of the instrument, or the amount or kind of property, he must specify the amount, terms, or kind which he requires, or be precluded from objecting afterwards.'" (*Julian v. Gold*, *supra*, 214 Cal. at p. 79.)

15

pp. 843-846.) "The purpose of the notice required by [Code of Civil Procedure] section 1161, subdivision 2, is to give the tenant the opportunity to pay the rent due and retain possession by avoiding forfeiture. [Citation.] This entire statutory procedure is intended to provide an expeditious and adequate remedy for obtaining possession of premises wrongfully withheld by tenants." (*Valov*, at p. 974.) However, the instant action is not one for unlawful detainer, and the statutory notice requirements are inapplicable. (See generally 7 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 19:201, p. 612 (8/2004) ["statutory notice is not required when the landlord seeks to recover a judgment for damages or delinquent rent without the recovery of possession"].)[12]

Although the March 1, 2010 letter primarily addressed damage to the pavement and KL Fenix's demand for $71,700 to repair it, the letter also stated, "[Y]ou have been tardy in tendering your rent every month for the past three years. Additionally, you have not tendered full rent payments for the past nine months. Therefore, you are in default of the Lease, and your option to renew is void." This was sufficient to apprise K Trans it had defaulted by failing to pay full rent. KL Fenix was under no obligation to be any more specific: To cure the default K Trans simply had to pay the past due amount. If K Trans was unsure how much it owed, it could inquire. By the time KL Fenix's cross-complaint for damages was filed, K Trans's default had long-ripened into an actionable breach because it had failed to cure.[13]

---

[12]     *System Inv. Corp. v. Union Bank* (1971) 21 Cal.App.3d 137 and *Tomczak v. Ortega* (1966) 240 Cal.App.2d 902 are similarly inapposite because they involve notices of trustee's sale under Civil Code section 2924 et seq., which has strict statutory requirements.

[13]     K Trans's only challenge to the award of late payment charges is to the sufficiency of the notice of breach. Although KL Fenix ultimately sought late payment charges for 17 months instead of every month as the March 1, 2010 letter indicated had been paid late, the letter was nonetheless sufficient notice of breach. Moreover, the lease provides that late charges are due if rent is not received within five days "without any requirement for notice to Lessee."

16

b. *The leased premises and common area pavement repairs*

K Trans contends the court erred in awarding KL Fenix $76,825.00 for pavement repairs because paragraph 4.2(e) of the lease excluded from common area operating expenses "Common Area capital improvements, such as the parking lot paving" and because there was no expert testimony establishing the extent of the damage due to K Trans's improper use of the premises and common areas as opposed to ordinary wear and tear or proper use of the common areas by K Trans and the other tenants. K Trans further contends it did not receive sufficient notice of default.

i. *There is substantial evidence K Trans's misuse of the common area and premises resulted in damage justifying the $76,825 repair cost*

Relying on testimony from Young Kim during his deposition that costs in excess of $1,000 are generally capital improvements, K Trans argues the lease excludes from common area expenses "capital improvements, such as the parking lot paving." KL Fenix contends, notwithstanding this provision, that K Trans had a duty to "surrender the Premises . . . in good operating order, condition and state of repair, ordinary wear and tear excepted" and that, pursuant to the lease, "'[o]rdinary wear and tear' shall not include any damage or deterioration that would have been prevented by good maintenance practice." KL Fenix further contends the lease provides "[a]ny Common Area Operating Expenses . . . that are specifically attributable to the Unit, the Building or to any other building in the Project or to the operation, repair and maintenance thereof, shall be allocated entirely to such Unit, Building, or other Building."

Neither K Trans nor KL Fenix's arguments are particularly helpful in resolving this issue. Although K Trans was not obligated under the lease to reimburse KL Fenix for capital improvements to the common area, that provision did not preclude a damage award for breach of lease provisions that injured a portion of the common areas by K Trans. Nonetheless, the lease provisions governing K Trans's duty to maintain and surrender the premises in good repair specifically pertain only to the premises, not the common areas. (Although repair of a portion of the leased premises is at issue, a

17

substantial percentage of the $76,825 award for paving relates to the common area.) Likewise, the provision stating common area operating expenses specifically attributable to the "Unit, the Building or any other building in the Project or to the operation, repair and maintenance thereof, shall be allocated entirely to such Unit, Building, or other Building" does not apply to the common area driveways and pavement. Thus, neither provision supports charging K Trans for repaving common areas.

Paragraph 2.8, however, prohibited K Trans from storing its containers on the common area pavement. There is substantial evidence, including Ji Kum Lim's own testimony, photographs, and testimony by employees of KL Fenix and another tenant, that K Trans violated this proscription, causing damage. "In an action for breach of contract, the measure of damages is 'the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom' (Civ. Code, § 3300), provided the damages are 'clearly ascertainable in both their nature and origin' (Civ. Code, § 3301)." (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 550; see *Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 432.)

Before closing arguments the court provided counsel with its preliminary view on the question whether the cost of the parking lot paving work was properly considered maintenance or capital improvement, on the one hand, or the cost to repair damage caused by K Trans's violation of the terms of the lease: "I'm inclined to accept that the pavement work on the common area was repair work, not maintenance or capital improvement. But there's an issue in my mind of betterment. That's a concept that I understand to mean that even though someone may have caused someone to spend money as a result of wrongful conduct of that person, if the condition of the damage is in better shape than it was or would have been anyway, then you don't get the full amount because you've got some betterment, not quite a capital improvement, but the same concept. . . . So, as I see it, we had five estimates, bids, [AR] Construction made two estimates, and as I indicated, some of them appeared to have betterment." Implicit in the statement of decision is that the court found the $76,825 bid from AR Construction,

18

almost half the amount paid to Commercial Paving to repair and replace the asphalt with concrete, to be a repair cost, not a capital improvement.

Substantial evidence supports the trial court's finding. The lease does not define capital improvement. Moreover, although Young Kim testified more than $1,000 for a repair that lasts more than one year is generally a capital improvement, Kim explained the purpose of the expenditure is significant: "So what I say in my deposition, even though the amount is over $1,000, my purpose or the purpose is to repair damages. So it should be considered as repair, not capital improvement." Additionally, although Nam recommended that only 571 feet of pavement be patched, Saletta recommended the pavement be removed and replaced; patching the area would be insufficient in his view given the extent of the damage.

The general prohibition against an appellate court reweighing the evidence is particularly apt here: The assessment of the extent of the damage, the boundaries and scope of the repairs and the evaluation of the credibility of the witnesses, including the contractors, were all carefully considered by the trial court, which provided the attorneys with its preliminary thoughts before oral argument. Counsel was then able to directly address the issues raised by the court.

Similarly, substantial evidence supports the court's findings "K Trans was the party responsible for the unauthorized and excessive damage to the pavement in the common area" and "the pavement damage in K Trans['s] leased premises was not normal wear and tear." KL Fenix was not required to present expert testimony on this issue. (Cf. *Polster, Inc. v. Swing*, *supra*, 164 Cal.App.3d at p. 431 [sufficient evidence without expert testimony that damage exceeded normal wear and tear].)

ii. *The notice of default was sufficient*

K Trans contends it did not breach the lease by storing containers in the common area because there was no notice of breach or three- or 30-day notice to cure. K Trans further argues the trial court did not find the March 1, 2010 letter was a valid notice and the statement of decision is silent on the question notwithstanding K Trans raised it in its objections to the proposed statement of decision. K Trans's arguments are specious. The

19

statement of decision identifies the March 1, 2010 letter as "written notice of defendants' breach of the lease." That letter specifically identified severe pavement damage due to K Trans's business operations as a lease violation and stated the need to have it repaired. The letter also referred to the several conversations K Trans and KL Fenix had about the damage to the pavement. Moreover, K Trans does not dispute it knew it was improperly storing containers on the common area pavement. Nothing more was required. (Cf. *Wong v. Thrifty Corp.* (2002) 97 Cal.App.4th 261, 263 [landlord sued tenant for breach of contract after tenant offered to pay nominal amount for damage discovered after tenant had vacated premises]; *Polster, Inc. v. Swing*, *supra*, 164 Cal.App.3d at p. 431 [landlord discovered damage to premises in violation of covenant to restore premises after tenant had surrendered premises].)

3. *The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees to KL Fenix*

a. *Governing law and standard of review*

Civil Code section 1717 (section 1717), subdivision (a), authorizes the trial court to award reasonable attorney fees to the prevailing party in a contract action if the contract specifically provides for an award of such fees.[14] "[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) Likewise, section 1717, subdivision (b)(1), authorizes the trial court to "determine that there is no party prevailing on the contract for purposes of this section."

"[I]n deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties'

---

14      Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.  The prevailing party determination is to be made only upon final resolution of the contract claims and only by 'a comparison of the extent to which each party ha[s] succeeded or failed to succeed in its contentions.'" (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)  When the judgment is a "'simple, unqualified win'" for one party on the only contract claims presented at trial, a trial court has no discretion to deny an attorney fee award to that party under section 1717.  (*Ibid.;* see also *id.* at pp. 875-876 ["when the decision on the litigated contract claims is purely good news for one party and bad news for the other—the Courts of Appeal have recognized that a trial court has no discretion to deny attorney fees to the successful litigant"].)  "Where neither party achieves a complete victory, the trial court has discretion to determine 'which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees.'" (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 439-440, quoting *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109.)  Typically, a determination of no prevailing party results when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought.  In other words, the judgment is "'considered good news and bad news as to each of the parties.'" (*Nasser v. Superior Court* (1984) 156 Cal.App.3d 52, 60.)

An order granting or denying an award of costs or attorney fees is generally reviewed for an abuse of discretion.  (See, e.g., *Ajaxo Inc. v. E*Trade Group, Inc.* (2005) 135 Cal.App.4th 21, 58 ["A trial court is given wide discretion in determining which party has prevailed on a contract.  We will not disturb such a determination on appeal absent a clear abuse of discretion."]; *McLarand, Vasquez & Partners, Inc. v. Downey Savings & Loan Assn.* (1991) 231 Cal.App.3d 1450, 1456 [no abuse of discretion where trial court "apparently concluded that fairness dictated each side should pay its own attorneys' fees"].)  Questions of statutory interpretation, however, are questions of law subject to our independent or de novo review.  (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *California Veterinary Medical Assn. v. City of*

*West Hollywood* (2007) 152 Cal.App.4th 536, 546.)  In addition, we independently determine as a question of law the scope of an attorney fee provision when the interpretation does not turn on extrinsic evidence.  (*Kalai v. Gray* (2003) 109 Cal.App.4th 768, 777; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705 (*Exxess Electronixx*).)

> b. *The trial court did not abuse its discretion in finding KL Fenix was the prevailing party*

K Trans contends the lease's definition of prevailing party as the party "who substantially obtains or defeats the relief sought" takes precedence over section 1717, which does not define the term "prevailing party."  Thus, K Trans, argues the court erred in finding KL Fenix was the prevailing party because it was awarded only 39 percent of the amount it sought in the cross-complaint.  (During argument on the motion for attorney fees, K Trans argued a substantial recovery is "more than 50 percent.")

As discussed, section 1717, subdivision (b)(1), defines prevailing party in contract actions as the "party who recovered a greater relief . . . ."  In *Exxess Electronixx*, *supra*, 64 Cal.App.4th 698 the court held "the definition of 'prevailing party' in [section 1717] is mandatory and cannot be altered or avoided by contract.  [Citation.]  Contractual provisions that conflict with the 'prevailing party' definition under section 1717 are void."  (*Exxess Electronixx*, at p. 707.)  Thus, the definition of prevailing party in section 1717 is applicable.

K Trans argues *Exxess Electronixx* is distinguishable because that case involved a direct conflict between the attorney fee provision in the lease—which permitted an award of attorney fees when a claim had been dismissed pursuant to a settlement—and section 1717, subdivision (b)(2), which does not.[15]  (*Exxess Electronixx*, *supra*, 64 Cal.App.4th at pp. 707-708.)  *Exxess Electronixx*'s prohibition against altering the statutory definition of "prevailing party" is not so limited; any attempt to modify that

---

15    Section 1717, subdivision (b)(2), provides, "Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."

22

definition is void. (*Wong v. Thrifty Corp.*, *supra*, 97 Cal.App.4th at p. 264 [lease agreement could not limit attorney recovery to determination of default at trial; § 1717's definition "is mandatory and cannot be avoided or altered by contract"].) Paragraph 31 of the lease alters the definition of prevailing party by imposing a substantiality threshold; as such, it cannot be enforced to deprive KL Fenix its right to recover attorney fees.

Moreover, whether applying the substantial-relief standard in the lease (as the trial court did) or the greater-relief-on-the-contract standard in section 1717, subdivision (b)(1), the trial court did not abuse its discretion in finding KL Fenix was the prevailing party. (See *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339 [trial court abuses its discretion in awarding attorney fees only if its decision "exceeded the bounds of reason"].) KL Fenix's litigation objective on the cross-complaint was to recover unpaid rent, late fees and the cost to repair the damaged pavement.[16] It achieved that objective. Although it did not recover as much as it sought to repair the damaged pavement, it nevertheless recovered a significant sum of money. Indeed, while KL Fenix may have only recovered 39 percent of what it initially sought in its cross-complaint, by the time of trial KL Fenix had reduced the amount of damages it sought to $184,811.40, thus recovering approximately 61 percent—more than the percentage K Trans's counsel had argued constituted a substantial recovery during argument on the attorney fees motion. As *Hsu* instructs, the prevailing party determination is not limited to evaluating whether a party achieved its objectives as set forth in an initial pleading, but is evaluated by examining resolution of the contract claim as it evolves throughout the litigation. (See *Hsu v. Abbara*, *supra*, 9 Cal.4th at p. 876.)

---

[16]    Section 1717 does not preclude a party who obtains an involuntary dismissal, as KL Fenix did here on K Trans's complaint, from being considered the prevailing party. (Cf. § 1717, subd. (b)(2) ["[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section"].)

c. *The trial court did not abuse its discretion finding the attorney billing statements admissible as business records*

K Trans contends the billing statements offered in support of KL Fenix's request for attorney fees were inadmissible under Evidence Code section 1271, the business records exception to the hearsay rule, because an insufficient foundation had been laid demonstrating their reliability. Without citation to authority, K Trans argues the court erred in accepting S. Young Lim's "oral argument" at the hearing in response to the foundation objections it raised. K Trans further argues errors on the billing statements demonstrate their lack of trustworthiness.

Evidence Code section 1271 provides, "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." Under penalty of perjury, S. Young Lim cured any deficiencies that may have existed in his declaration laying the foundation for the billing statements. Lim stated the billing statements were prepared by his office in the ordinary course of business; explained how the billing program and process worked, including that attorneys were required to record the time they spent on a matter when they performed the work; and stated that he supervised all of the attorneys working on the matter and reviewed the bills. Lim also provided explanations for two entries K Trans had contended were clearly erroneous. Lim conceded one entry was an error and provided a plausible explanation that did not undermine the reliability of the business records generally, which the court accepted. This was sufficient. The trial court did not abuse its broad discretion in admitting the billing statements under Evidence Code section 1271. (See *County of Sonoma v. Grant W.* (1986) 187 Cal.App.3d 1439, 1450 [when "trial court has determined that the foundation laid was sufficient to support

24

the introduction of business records exception, and the record reasonably supports this determination, its conclusion is binding on the appellate court"].)

Even if the billing statements themselves were inadmissible, there was sufficient evidence supporting the fee award. Detailed time sheets and billing records, although useful, are not required: "'Although a fee request ordinarily should be documented in great detail, it cannot be said . . . that the absence of time records and billing statements deprive[s] [a] trial court of substantial evidence to support an award. . . .' [Citation.] '[T]he verified time statements of [an] attorney[], as [an] officer[ ] of the court, are entitled to credence in the absence of a clear indication the records are erroneous.'" (*City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 784-785.) "The law is clear . . . that an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375; see *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["there is no legal requirement that an attorney supply billing statements to support a claim for attorney fees"]; *Steiny & Co. v. California Electric Supply Co.* (2000) 79 Cal.App.4th 285, 293 ["there is no legal requirement that [billing] statements be offered in evidence," and an "attorney's testimony as to the number of hours worked is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records"].)

### d. *The trial court did not abuse its discretion in awarding $76,000 as reasonable attorney fees*

"'It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court. . . . [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other

25

circumstances in the case.'" (*PLCM Group v. Drexler, Inc.* (2000) 22 Cal.4th 1084, 1096.) "'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" — meaning that it abused its discretion.'" (*Id.* at p. 1095.)

The trial court thoroughly and thoughtfully examined the itemized billing statements and considered the arguments K Trans raises on appeal—for example, the work in connection with the default proceedings was unnecessary because KL Fenix's counsel need only have called K Trans's former counsel to avoid the entire default proceeding, the amount of time spent drafting discovery responses was excessive, certain billing entries were erroneous because they referred to subject matter that was not at issue in the litigation and KL Fenix did not need to have two attorneys attend the final status conference and appear at trial in this straightforward breach of contract action. The trial court rejected K Trans's contention the default judgment proceedings could have been easily avoided, noting K Trans's former attorney was not cooperating with his own client, let alone opposing counsel, justifying KL Fenix's choice to "defend [the] default that they obtained." The court also found unpersuasive K Trans's argument KL Fenix had utilized inexperienced personnel on the case who were essentially trained on the job: "One thing that I found was commendable was that in looking at the expenses, it seemed to me that the law firm representing the Defendant's last cross-complaint was lucky enough to have law clerks that are pretty good, billing at a much lower rate. It's a commendable way of doing things. I didn't have any problems with whoever the law clerk is with initials J.K.C. You give her or him a lot to do." The court, however, did find some of the work was duplicative and awarded KL Fenix almost $6,000 less than it sought. This careful analysis by the experienced trial judge who had presided over the matter, including the default proceedings, demonstrates the trial court acted well within its broad discretion to determine the reasonableness of the attorney fees.

## DISPOSITION

The judgment is affirmed. KL Fenix is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27